```
                   UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
_____
                                    )
HARRISON SHERWOOD,                  )
                                    )
            Plaintiff,              )
                                    )  Civil Action No. 01-02635 (EGS)
      v.                            )
                                    )
DONALD L. EVANS, Secretary,         )
U.S. Department of Commerce         )
                                    )
            Defendant.              )
_____)
```

**MEMORANDUM OPINION**

Plaintiff, Harrison Sherwood, filed this action under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, alleging that the International Trade Administration at the U.S. Department of Commerce did not hire him because of his age. Pending before the Court is defendant's Motion for Summary Judgment. Defendant argues that the available position was a contract position, and therefore not subject to ADEA. Defendant next argues that even if the ADEA applies, plaintiff cannot establish a *prima facie* case because he was not qualified for the position. Third, defendant contends that plaintiff's lack of qualification is a legitimate reason for not selecting plaintiff, and that plaintiff has not offered any evidence to demonstrate that this reason is pretext for discrimination. Upon consideration of defendant's motion, and the response and reply

1

thereto, the Court concludes that the ADEA does not apply.[1] Accordingly, defendant's Motion for Summary Judgment is **GRANTED** and plaintiff's complaint is **DISMISSED WITH PREJUDICE.**

## I. BACKGROUND

On September 19, 1996, Robert Kohn, Senior Commercial Officer, Bonn Office, United States and Foreign Commercial Services ("US & FCS"), International Trade Administration, U.S. Department of Commerce, requested that the U.S. Department of State ("State Department") approve the filling of a Personal Services Contract ("PSC") position in Duesseldorf, Germany. On November 15, 1996, the U.S. Embassy issued a Job Opportunity Announcement for the position (the "Announcement"). Defendant's Statement of Undisputed Material Facts ("Def. Statement") at ¶ 3; Def. Ex. 3. The US & FCS office in Bonn ("the Bonn Office") was to conduct

---

[1] Because this conclusion is dispositive of the case, the Court need not reach defendant's other arguments. The Court notes, however, that even if the ADEA did apply, and even if plaintiff could establish a *prima facie* case, the uncontroverted evidence demonstrates that defendant has, without question, articulated a legitimate nondiscriminatory reason why plaintiff was not selected: he was not a resident of Germany. Neither party disputes that applicants for the position were required to have German residency. Job Opportunity Announcement ("The Announcement"), Def. Ex. 3 at 4 ("In order to be eligible to apply, American citizens must have a valid German residency permit"). Plaintiff admits that at the time that he applied, he did not live in Germany or have a valid residency permit. Affidavit of Harrison Sherwood (Nov. 1, 1997) at 7, Def. Ex. 21 ; Plaintiff's Deposition (Jan. 10, 2003)("Pl's Depo.") at 46, Def. Ex. 29. Plaintiff has not sufficiently demonstrated that this reason is a pretext for discrimination. *See Brown v. Brody*, 199 F.3d 446, 458-59 (D.C. Cir. 1999).

interviews and evaluate candidates, but the selection was a "joint decision" with the US & FCS office in Washington, D.C. ("the D.C. Office").  Def. Statement at ¶ 22.[2]

The position description provided that the Personal Services Contractor would hold the title of "Commercial Representative," and would "carr[y] out the entire range of commercial work with almost no day-to-day supervision."  Def. Statement at ¶ 4.  Major duties of the position include working to expand U.S. exports to Dusseldorf, supporting the Principal Officer in furtherance of Commercial Service Germany's goals and objectives, helping U.S. companies resolve trade complaints, and contributing to commercial reporting.  Announcement at 4-5.  In addition, the Commercial Representative would serve as "an analyst and advisor to [Commercial Service] Germany management in planning, organizing and implementing programs to facilitate the expansion of U.S. exports in the region."  Def. Statement at ¶ 4, Def. Ex. 13 at 2.  The duties of a PSC contractor, however, are inherently limited; a contract employee cannot form policy, plan programming, represent the U.S. government, control money,

---

[2]Plaintiff argues that this statement is inaccurate and that there was no substantive role for US & FCS headquarters to play in the hiring decision.  Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl. Resp.") at 3. Plaintiff states that "Questions of residency and experience were left to the Embassy to determine."  *Id.*  Because plaintiff offers no evidence in support of this statement, however, the Court considers defendant's statement uncontroverted.

property, or other valuable resources, or supervise direct-hire employees of the U.S. government.  3 Foreign Affairs Manual ("FAM") 171.2(b)(2), Def. Ex. 20; Affidavit of Kay Kuhlman (Nov. 3, 1997) ("Kuhlman Aff.") at 2, Def. Ex. 9;  Affidavit of George Knowles (Oct. 17, 1997) ("Knowles Aff.") at 4, Def. Ex. 8.

Neither party disputes that the Announcement included a residency requirement as a precondition to applying.  The six-page Announcement stated this requirement *twice*.  Announcement at 1 (stating that the PSC position was open to "eligible American family members of accredited U.S. Mission personnel in Germany and American citizens residing in Germany"); Announcement at 3 ("In order to be eligible to apply, American citizens must have a valid German residency permit.").  The U.S. Department of State Job Announcements routinely include residency requirements.  Def. Statement at ¶ 12.  The State Department requires its PSC applicants to reside in the country in which the work is to be performed.  *Id.*

Among the eight candidates for the position were Kenneth Keefe (age 40), plaintiff (age 63), and Edward Fantasia (age 47). Def. Statement at ¶ 15; Defendant's Motion for Summary Judgment at 4.  Mr. Kohn and Ms. Kuhlman, in the Bonn Office, created a short list for the position and ranked these candidates first through third, respectively, and sent the list to the D.C. office.  Def. Statement at ¶ 25.  In reviewing the short list

from the Bonn Office, Mr. George Knowles, then-Regional Director for Europe, and Ms. Dolores Harrod, Deputy Assistant Secretary, questioned plaintiff's inclusion because plaintiff was not a resident of Germany.  Affidavit of Dolores Harrod (Oct. 16, 1997) at 2, Def. Ex. 7; Knowles Aff. at 2-3.  Mr. Knowles conveyed to Mr. Kohn and Ms. Kuhlman that plaintiff was not qualified primarily because of his lack of residency and also because of his lack of current knowledge of German trade, economy, and business.  Knowles Aff. at 2.  Both offices agreed to offer the position to Mr. Keefe, but Mr. Keefe declined the offer.  Def. Statement at ¶ 27.  Unbeknownst to Mr. Knowles, Mr. Keefe had recently moved from Germany to Florida sometime before he was offered the position and, therefore, he did not meet the residency requirement.  Knowles Aff. at 2.  Since Mr. Keefe declined the position, however, defendant did not have to address the residency problems.  The position was then offered to Mr. Fantasia, who was living in Germany, had a German residency permit, and had current knowledge of German business, trade, and investment practices.  Application for PSC position of Edward Fantasia at 1-4, Def. Ex. 23.

**II.   STANDARD OF REVIEW**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the

5

moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56*; Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp.*, 477 U.S. at 324.

### III. PLAINTIFF IS NOT AN APPLICANT FOR EMPLOYMENT UNDER THE ADEA, BUT RATHER AN APPLICANT FOR A CONTRACTOR POSITION

Liability under the ADEA is not triggered against the federal government unless the complainant is an "applicant for employment" of a federal agency.  *See* 29 U.S.C. § 633a(a); 29 C.F.R. § 1614.103.  In order to determine whether the position was for an employee or an independent contractor, the court should "analy[ze] the economic realities of the work relationship." *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979) (citations omitted).  The *Spirides* Court detailed eleven factors to distinguish an employment position from an independent contractor position, but observed, "the extent of the

employer's right to control the 'means and manner' of the worker's performance is the most important factor to review. . ." *Id.* at 831-32. The Circuit later grouped the factors into four categories: 1) the intent of the parties; 2) whether contracting work out is justifiable as a prudent business decision; 3) the defendant's control over the work to be performed; and 4) whether the relationship shares attributes commonly found in arrangements with independent contractors or employees. *See Redd v. Summers*, 232 F.3d 933, 939 (D.C. Cir. 1999) (citing *Spirides*, 613 F.2d at 831).

### 1. The intent of the parties

This group consists of one *Spirides* factor, "the intent of the parties, primarily as reflected in the contract between the 'contractor' and its 'client.'" *Redd*, 232 F.2d at 939. Defendant argues that it clearly stated its intent that the PSC position was contractual. Plaintiff conceded at his deposition that one of the things that made the PSC position attractive to him was the fact that it was a contract position because he could earn a contract salary and still draw on his retirement annuity. *See* Pl's Depo. at 27.

Plaintiff does not argue that he did not intend to apply for a contract position. Rather, plaintiff attempts to distinguish "impersonal" service contracts, such as contracts for cleaning, computer maintenance, security, *etc.*, from "personal" service

contracts.  Personal service contracts, plaintiff contends, are those in which the contractor is personally responsible to the employer and cannot be substituted with someone from a roster of qualified persons.  Plaintiff maintains that while impersonal service contracts may not be governed by ADEA, the PSC position was for a personal service contract, and the position so closely mirrored employee positions that the position in this case is subject to ADEA.

Plaintiff offers no legal authority recognizing a distinction between personal and impersonal service contracts.  Indeed, case law indicates the distinction is not legally significant.  In *Zhengxing v. Nathanson*, the Court held that a plaintiff who was hired to perform "broadcast related duties," such as announcing, translating news and features, and producing was an independent contractor.  *Zhengxing v. Nathanson*, 215 F. Supp. 2d 114, 115 (D.D.C. 2002).  Although the duties of the plaintiff in *Zhengxing* clearly went beyond impersonal services, the *Zhengxing* Court made no distinction on the basis of the services offered by the plaintiff.  Likewise, in the instant case, the PSC position's duties contemplate that the person hired will perform them; duties include "trade promotion, outreach and contacts, research and reporting, business counseling." Announcement at 4.  The Court is aware of no reason to depart from *Zhengxing* to carve out a special category of "personal"

service contracts that would be subject to the ADEA.

Therefore, because both parties intended the position to be a contractual relationship, regardless of the type of services required, this factor weighs in favor of defendant.

### 2. Whether contract work is justifiable as a prudent business decision

The second *Redd* group contains three *Spirides* factors: 1) whether the supervision of the contractor by the client is required; 2) whether the contractor's work requires special skills; and 3) whether the work performed by the contractor is an integral part of the client's business. *Redd*, 232 F.3d at 939.

The PSC position required a specialist subject to minimal supervision. The position called for knowledge of "Germany's economy, as well as the prevailing business, trade, and investment practices." Announcement at 3. The Announcement also specifies that the position would be minimally supervised. The PSC Commercial Representative "carries out the entire range of commercial work with almost no day-to-day supervision" and serves as "an analyst and advisor to [Commercial Service] Germany management . . . to facilitate the expansion of U.S. exports." Position Description at 2, Def. Ex. 13. Plaintiff argues that the level of supervision of the contractor in Dusseldorf is the same of Principal Commercial Officers in the other U.S. Consulates in Germany, but he does not provide the Court with any information about how other Principal Commercial Officers are

supervised.  Therefore, he has not provided evidence to dispute defendant's evidence that the PSC position requires minimal supervision.

Under the second factor, the specialized skills sought in this case stand in contrast to the plaintiff in *Holt v. Winpisinger*, 811 F.2d 1532 (D.C. Cir. 1987).  In that case, the plaintiff was "trained [by her employer] to use her office equipment, and taught to perform many clerical tasks such as bookkeeping, typing up leases and updating the building directory."  *Id.* at 1539.

Finally, the contract position is not an integral part of defendant's business, but rather a short-term solution that balances US & FCS's conflicting needs.  On the one hand, US & FCS needed to keep down the number of full time employees by not replacing Foreign Service Officers who had left.  On the other hand, it needed to hire Americans at each of its posts, because "when an American business person walks in he wants to see an American."  Kohn Aff. at 2.  The temporary contract position was expected to help the "well functioning of the Hamburg and Dusseldorf offices" in the short-term by filling positions that had been vacant for months.  Kuhlman Aff. at 2.  The long vacancy period and the short-term nature of the PSC solution indicate that these positions are not integral to the business of the employer, but rather stop-gap solutions.  Given the circumstances

of US & FCS's conflicting needs, the contract position was justifiable as a prudent business decision.

Plaintiff argues that the contract position was not justifiable because the skills required for a contract position in Dusseldorf are the same as that of Principal Commercial Officers in other U.S. Consulates in Germany.  Without evidence of this, however, the Court cannot conclude US & FCS's decision to use contractors is an unjustifiable or an imprudent business decision.  Thus, the Court finds ample evidence to conclude that the contract position was a justifiable business decision.

   **3.   Defendant's control over the work to be performed**

This group of *Redd* factors addresses 1) whether defendant furnishes the equipment used and place of work; and 2) the manner in which the work relationship is terminated.  *Redd*, 232 F.2d at 939.

Defendant concedes that plaintiff would have used US & FCS equipment and office space.  As defendant notes, however, this factor has only a minimal impact on the Court's analysis.  *See Zhengxing*, 215 F. Supp. 2d at 118 (finding contractual relationship despite employer's concession that it furnished contractor's equipment and office space).

 Moreover, the matter in which the work relationship could be terminated clearly reflects an independent contractor relationship.  According to the Announcement, the PSC position

was for a fixed period of less than a year, although the agency was permitted to extend the contract up to a maximum of five years. Announcement at 1. Plaintiff contends that because either party can terminate the contract with appropriate notice, the relationship is more like that between an employer and employee. Termination with notice is common to *both* employer-employee relationships and employer-independent contractor relationships. Fixed period of employments, however, are unique to the independent contractor setting. Plaintiff does not provide the Court with any authority for its position that termination with notice refutes the inference that a fixed period of employment is indicative of an independent contractor relationship. The fixed period of the contract provides strong evidence of a contractual relationship and, therefore, the Court finds that this factor favors the defendant.

### 4. Employment Benefits

This final *Redd* group addresses "whether the relationship shares attributes commonly found in arrangements with independent contractors or with employees," specifically: 1) the duration of the engagement; 2) the method of payment; 3) whether annual leave is afforded; 4) whether the worker accumulates retirement benefits; and 5) whether the defendant pays social security taxes. *Redd*, 232 F.3d at 940.

As mentioned above, the Announcement contemplated a contract

for one year, with a possibility for extensions for up to five years, subject to incumbent's performance and "funding availability." Announcement at 1. The method of payment is bi-weekly distribution of salaried a sum for the fixed term of the position. Plaintiff states, without supporting evidence, that this method of payment is "identical" to "the average Foreign Commercial Service assignment." Plaintiff's Response to Defendant's Motion for Summary Judgment at 3-4. While plaintiff presumably means the bi-weekly schedule is identical, he does not explain whether the funding for the average Foreign Commercial Service assignment is drawn from an annual salaried sum. Plaintiff also offers no evidence that the average Foreign Commercial Service assignment is paid subject to "funding availability."

    Defendant admits that the PSC Commercial Representative accrues annual and sick leave, but argues that every other financial aspect of the position reflects an independent contractor relationship: 1) the incumbent is not eligible under Federal retirement programs or for the "Foreign Earned Income" IRS exclusion; 2) the incumbent must enroll in the German Social Security System and make both employer and employee contributions; 3) the incumbent is ineligible to participate in Federal life insurance and health benefits programs, although the Agency may make a limited contribution toward the actual cost of

life and health insurance policies; 4) the incumbent is not eligible for the Incentive Awards Program; 5) the incumbent is not eligible for Labor Union representation or to participate in the Foreign Service Grievance System." Personal Services Contract Action for Edward Fantasia at 3.

Plaintiff disputes defendant's argument that the incumbent is not eligible under Federal retirement programs. He argues that FICA contributions are compulsory and that the employer must also pay social security taxes. Although FICA contributions are mandatory, Personal Services Contract Action for Edward Fantasia at 3, plaintiff points to no other eligibility for retirement benefits.

In sum, although the PSC Commercial Representative would use US & FCS's equipment, accrues sick and annual leave and would make FICA contributions, the balance of the *Spirides* factors favor the defendant. The parties both knew the position was a contractual one, and plaintiff was attracted to the position for that reason. The contract position required minimal supervision and fulfilled a particular, short-term need for the defendant and, therefore, was justifiable as a prudent business decision. The position was limited to a specific period of time, and was subject to funding availability. Finally, the minimal employment benefits indicate the position was not a relationship between employer and employee.

IV. **The Findings and Conclusions of the Equal Employment Opportunity Commission Administrative Judge are not binding on this Court**

Plaintiff also relies on the Findings and Conclusions of the Equal Employment Opportunity Commission Administrative Judge ("AJ") to support his contention that the PSC position is subject to ADEA. Although ultimately holding that defendant articulated a legitimate, non-discriminatory reason for not hiring the plaintiff, the AJ did find that the ADEA applied. This Court is not bound by the AJ's holding. Moreover, the AJ's analysis of the *Spirides* factors is of limited persuasiveness because it does not thoroughly examine each group. Instead, the AJ merely stated:

> The record reflects that the duties of the PSC position mirrored the duties of the Commercial Service Officer position in every respect, including supervisory control, with the exception that the PSC incumbent could not supervise employees, dispense or authorize funds, or represent the U.S. Government. The incumbent was eligible for annual and sick leave, holiday pay and life and health insurance benefits. . . Therefore, the position was that of an employee, not a contractor.

Administrative Proceeding, Final Agency Decision at 12, Def. Ex. 10. The AJ's conclusory comparison of the PSC position and the Commercial Service Officer position does not adequately address the *Spirides* factors. In addition, the AJ exaggerated the emphasis on employment benefits, without detailing his reasons for doing so or explaining why he discounted the other factors. Therefore, plaintiff's reliance on the AJ's opinion is misplaced.

**IV.  CONCLUSION**

For the foregoing reasons, the Court finds that plaintiff was not an "applicant for employment" under the ADEA.  Therefore, defendant's Motion for Summary Judgment is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.**  An appropriate Order accompanies this Memorandum Opinion.


**Signed by:       EMMET G. SULLIVAN**
**                 UNITED STATES DISTRICT JUDGE**
**                 March 17, 2006**